IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02444-CMA-NRN

REID POLLACK,

Plaintiff,

v.

BOULDER COUNTY,
POLLY MILLER #545 BOULDER COUNTY SHERIFF'S DEPARTMENT, and
STEVE KELLISON #565 BOULDER COUNTY SHERIFF'S DEPARTMENT,

Defendants.

## REPORT & RECOMMENDATION ON
## MOTION TO DISMISS (DKT. #24) AND
## MOTION FOR LEAVE TO AMEND THE COMPLAINT (DKT. #59)

**N. Reid Neureiter**
**United State Magistrate Judge**

Presently before the Court are Defendants Boulder County, Polly Miller, and Steve Kellison's Motion to Dismiss (Dkt. #24), and Plaintiff Reid Pollack's Motion for Leave to Amend the Complaint (Dkt. #59), both of which have been referred by Judge Christine M. Arguello. (Dkt. #25 and Dkt. #60.) The Court has reviewed the parties' filings, taken judicial notice of the Court's entire file in this case, considered the applicable Federal Rules of Civil Procedure, statutes, and case law, and heard argument by all parties at a hearing held on February 7, 2019.

Being fully informed, and for the reasons addressed more fully herein, the Court RECOMMENDS that the motion to dismiss (Dkt. #24) be GRANTED, and the motion for leave to amend (Dkt. #59) be GRANTED in part and DENIED in part.

# I. Background

On July 25, 2014, Defendants Detective Polly Miller and Deputy Steve Kellison arrested Mr. Pollack without a warrant on a charge of second degree assault-domestic violence. (Dkt. #15 ¶ 5; Dkt. #1-1 at 113-15.[1]) According to the Arrest Affidavit that Detective Miller filled out, Mr. Pollack allegedly injured his partner, Karen Rusnik, on June 30, 2014, and she contacted the police on July 5, 2014 to report the incident. (Dkt. #1-1 at 113-15.) After being arrested, Mr. Pollack spent five days in jail before being released on a bond that included a no-contact order. (Dkt. #15 ¶¶ 40, 50.) On August 2, 2014, Mr. Pollack was arrested for violating the no-contact order. (*Id.* ¶ 143.)

The second-degree assault charge was dismissed on or around October 12, 2015 because, according to the Boulder County District Attorney's motion to dismiss, Ms. Rusnik could not be located to testify, and "[w]ithout [her] testimony, the People are unable to safely proceed to trial in this case." (Dkt. #59-1 at 33.) Mr. Pollack disputes that Ms. Rusnik could not be found, and asserts the reason stated for dismissing the case against him was false. (Dkt. #35 at 2-3.) In his proposed amended complaint, Mr. Pollack says "that Karen [Ms. Rusnik] was ready and willing to testify but not for the prosecution." (Dkt. #59-1 ¶ 76.) In or around April 2016, a jury found Mr. Pollack guilty

---

[1] Mr. Pollack attached the Probable Cause Arrest Affidavit (the "Arrest Affidavit"), other Boulder County Sheriff's Office forms and reports, and several court filings to his initial complaint. The Court "may consider documents attached to the Complaint as exhibits, as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed." *Vaughn v. Krehbiel*, 367 F. Supp. 2d 1305, 1309 (D. Colo. 2005). However, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006).

of violating the no-contact order. (Dkt. #15 ¶¶ 85, 94.) His appeal of that conviction was denied. (*Id.*, ¶ 143.)

Mr. Pollack, who is proceeding pro se,[2] initially brought this action in relation to these two arrests. At the February 7, 2019 hearing, however, he clarified that he is no longer pursuing any claims related to his August 2, 2014 arrest and subsequent conviction for violating the no-contact order. Nevertheless, and to ensure a complete record, I will address all of Mr. Pollack's claims as raised in his amended complaint (Dkt. #15) as well as his proposed amended complaint. (Dkt. #59-1.)

According to Mr. Pollack, probable cause did not exist to arrest him on July 25, 2014. He asserts that Detective Miller's Arrest Affidavit (Dkt. #1-1 at 113-115) included false statements. (*Id.* ¶ 14.) Specifically, Detective Miller recounts in the Arrest Affidavit a conversation she allegedly had with Ms. Rusnik on July 25, 2014, the date of Mr. Pollack's arrest. (Dkt. #1-1 at 115.) Mr. Pollack asserts this conversation never took place, and has provided a sworn affidavit in which Ms. Rusnik states she "refused [Detective] Miller the interview the day of [Mr. Pollack's] arrest." (Dkt. #11-4, #45-5, #59-1 at 35.) Mr. Pollack therefore argues Detective Miller fabricated this conversation. (Dkt. #15 ¶11.) Mr. Pollack further asserts that his wrongful arrest on July 5, 2014 resulted in the wrongful issuance of the no-contact order, and his unfair prosecution for violating it.

---

[2] The Court must liberally construe the filings of pro se litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

(*E.g. id.* at ¶ 58.) He also alleges that the July 25, 2014 arrest set in motion a chain of events that resulted in the collapse of his business. (Dkt. #15 ¶¶16-18, 36.)

In his Amended Complaint (Dkt. #15), Mr. Pollack asserts six claims against Defendants: (1) seizure lacking probable cause (against Detective Miller); (2) violation of double jeopardy law (against Boulder County); (3) unreasonable seizure (against Detective Miller and Deputy Kellison); (4) exploitation of an illegal arrest and malicious prosecution (against all Defendants); (5) failure to train officers (against all Defendants); and (6) violation of his right to a speedy trial (against Boulder County). (*Id.*)

Defendants have moved to dismiss these claims. (Dkt. #24.) They argue: (1) Boulder County is not amenable to suit, and is not responsible for the alleged actions of the District Attorney, the District Court, the Sheriff's Department, or its employees; (2) Mr. Pollack's false arrest claims (claims one and three) and failure to train claim (claim five) are barred by the applicable statute of limitations; (3) Mr. Pollack's double jeopardy and right to a speedy trial claims (claims two and five) are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); (4) Mr. Pollack has failed to allege all elements of a malicious prosecution claim (claim four); and (5) Deputy Kellison and Investigator Miller are entitled to qualified immunity. (*Id.*)

Mr. Pollack filed an opposition to Defendants' motion to dismiss. (#35.) He also filed a motion for leave to amend his complaint. (Dkt. #59.) In his proposed amended complaint (Dkt. #59-1), Mr. Pollack withdrew his claims against Deputy Kellison, and withdrew his claims for double jeopardy (claim two) and violation of his right to a speedy trial (claim five). (*Id.*) He also added a claim for "judicial deception," and a claim "for declaratory and injunctive relief from Boulder County for its deliberate indifferent failure

4

to adopt a policy necessary to prevent constitutional violations." (Dkt. #59 at 2.) Finally, Mr. Pollack's proposed amended complaint specifically asserts a malicious prosecution claim in relation to his July 25, 2014 arrest. (Dkt. #59-1 ¶¶ 71-93.)

Defendants' oppose Mr. Pollack's motion for leave to amend, arguing it should be denied as futile and for undue delay. (Dkt. #64.)

## II. Legal Standards

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility in this context means the plaintiff has pled enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement—"it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Although "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff," *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir.1991), the court need not accept legal conclusions, *Iqbal*, 556 U.S. at 678, or conclusory allegations without supporting factual averments, *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.1998). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "[a] pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on [a] motion[] to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).

### B. Motion for Leave to Amend

After a responsive pleading has been served, "a party may amend its pleadings only with the opposing party's written consent or the court's leave". Fed R. Civ. P. 15(a)(2). The Court has the discretion whether to grant a motion seeking leave to amend, and leave should be freely granted where justice requires. *Id.*; *Anderson v. Merrill Lynch Pierce Fenner & Smith Inc.,* 521 F.3d 1278, 1288 (10th Cir. 2008). The Court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. . . .The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to

dismiss under Fed. R. Civ. P. 12(b)(6)." *Dorough v. Am. Family Mut. Ins. Co.*, No. 15-CV-02388-MSK-KMT, 2016 WL 1426968, at *2 (D. Colo. Apr. 11, 2016).

### III. Analysis

**A. Defendants' Motion to Dismiss (Dkt. #24)**

As noted above, Defendants have moved to dismiss all six claims asserted against them by Plaintiff in his Amended Complaint. (Dkt. #15.) Because this case is before me on a Rule 12(b)(6) motion, my analysis is limited to the facts alleged and positive inferences in favor of plaintiff. However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall,* 935 F.2d at 1110.

**1. Boulder County is not Amenable to Suit, and is Not Responsible for Actions by the District Attorney, State Courts, or the Sheriff's Department**

Mr. Pollack has asserted four claims against Boulder County: double jeopardy (claim two), exploitation of illegal arrest, malicious prosecution (claim four), failure to train (claim five), and violation of his right to a speedy trial (claim six). In Colorado, however, a county may only be sued as "the board of county commissioners of the county _____." Colo. Rev. Stat. § 30-11-105. As a result, lawsuits against a county under any other name are a nullity. *Calahan v. Jefferson Cty.*, 429 P.2d 301, 302 (Colo. 1967).

Even if Mr. Pollack were to amend his complaint to name the Board of County Commissioners of the County of Boulder, his claim would still fail because the Board cannot as a matter of law be held responsible for any of the alleged conduct forming the bases for these claims. As Defendants point out, Mr. "Pollack's theory of relief against Boulder County is premised on the legally incorrect assumption that there is a 'Boulder

County justice enforcement division' that includes 'sheriffs, prosecutors, [and] judges,'" all of whom, according to Mr. Pollack, "were complicit in carrying out what they knew or ought to have known to be an ill-founded and unnecessary prosecution." (Dkt. #24 at 4; Dkt #15 ¶ 145.)

In this regard, Mr. Pollack seeks to hold Boulder County responsible for how the "proceedings of law [we]re administered" (Dkt. #15 ¶ 150), for its alleged failure to provide adequate oversight of the charges brought against him (*id.*), and for "implicitly encouraging and supporting [his] continued prosecution" for violating the no-contact order. (*Id.* ¶ 151, and at ¶ 96 (County responsible for damages arising from "the extension of the prosecution beyond the dismissal of the first case.").) He alleges the prosecution's decisions were "supported implicitly by the County's policies" (*id.* ¶ 153), and thus Boulder County should be held responsible for its "failure to provide a fair and impartial administration of justice." (*Id.* ¶¶ 36, 154.) Mr. Pollack also alleges that Boulder County should be held responsible for failing to train police officers who work for the Sheriff's Department. (*Id.* ¶ 132.)

Neither Boulder County, nor the Boulder County Board of County Commissioners, may be held liable for actions allegedly taken by the Sheriff's Department or its employees "because under Colorado law a Board lacks the power to control the hiring, termination, or supervision of a Sheriff's employees, or otherwise control the terms and conditions of their employment." *Bristol v. Bd. Of Cty. Comm'rs*, 312 F.3d 1213, 1215 (10th Cir. 2002) (explaining that under the Colorado constitution, the County Sheriff is a distinct position, separate from the Board of County Commissioners). Because the Boulder County District Attorney's Office is an arm of the

state, rather than a political subdivision of Boulder County, its conduct and activities also cannot be imputed to the Boulder County Board of County Commissioners. *See, e.g.*, *Anderson v. Adams County,* 592 P.2d 3, 4 (Colo. App. 1978) ("The district attorney is a state officer serving a particular judicial district, independent of the county government, with authority to hire and fire his own employees"), as cited in *Bragg v. Office of the Dist. Atty., Thirteenth Judicial Dist.*, 704 F. Supp. 2d 1032, 1065 (D. Colo. 2009).

To the extent Mr. Pollack is attempting to sue Boulder County for decisions made by the state court judge who presided over his April 2016 trial, this claim fails as well. Colorado state district court judges are appointed by the governor, and neither Boulder County nor the Boulder County Board of County Commissioners has any authority, control, or responsibility for actions taken by state district court judges who preside over cases in Boulder County. In addition, "state court judges are absolutely immune from monetary damages claims for actions taken in their judicial capacity, unless the actions are taken in the complete absence of all jurisdiction." *Sawyer v. Gorman*, 317 F. App'x 725, 727 (10th Cir. 2008). Here, all actions taken by the judge—for example, not allowing the jury to hear certain evidence, and allowing the prosecution to use the term "protection" (Dkt. #15 ¶¶ 84, 85)—"clearly implicate actions taken in the judge[']s[] judicial capacity, and also not in the absence of all jurisdiction," and therefore the judge—and in turn Boulder County and its Board— is "absolutely immune from [Mr. Pollack's] damages claim." *Id.* at 728.

Even assuming Mr. Pollack had properly sued the Sheriff's Department in its official capacity, dismissal of Mr. Pollack's claims would still be warranted.

Although section 1983 generally applies only to natural persons, the Supreme

Court has held that municipalities and other local governmental bodies are "persons"

within the meaning of 42 U.S.C. § 1983, and thus may be held liable under it. *Monell v.*

*Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978). To assert official capacity claims

under *Monell*, Mr. Pollack must allege non-conclusory facts sufficient to demonstrate

that (1) a Sheriff's Department employee committed a constitutional violation; and (2) a

custom or policy of the Sheriff's Department was the moving force causing the alleged

deprivation. *Cordova v. Aragon,* 569 F.3d 1183, 1193–94 (10th Cir. 2009). Although Mr.

Pollack alleges that Deputy Kellison and Detective Miller violated his Fourth

Amendment rights by arresting him without a warrant under a false claim of exigency

(claims one and three), as discussed below these claims are barred by the applicable

statute of limitations.

But even if these claims were not barred by the applicable statute of limitations,

and assuming Mr. Pollack could adequately allege that Detective Miller or Deputy

Kellison violated his Fourth Amendment rights, Mr. Pollack has failed to adequately or

plausibly allege that a custom or policy of the Sheriff's Department was the moving

force behind, or directly caused, the deprivation of his constitutional rights. In his

Amended Complaint, Mr. Pollack alleges, in a conclusory manner, that Boulder County

has a "Policy disallowing modification to automatically imposed conditions of no-contact

orders." (Dkt. #15 ¶ 17.) But this allegation is not plausible as it is belied by the written

policy,[3] provided by Mr. Pollack, which states "[a] victim can request that the order be

---

[3] I may consider the written policy in ruling on Defendants' motion to dismiss because it
is "referred to in the [Amended] Complaint and [is] central to [Mr. Pollack's] claim."
*Vaughn*, 367 F. Supp. 2d at 1309.

modified," and thereafter specifies the procedures to be followed and corresponding time frames for such modification. (Dkt. #45-3.)

As Mr. Pollack also concedes, Colorado law specifically allows a defendant to "apply[] to the court at any time for modification or dismissal of the protection order." (Dkt. #35 ¶ 41, citing Colo. Rev. Stat. § 18-1-1001(3).) Pursuant to this statute,[4] Ms. Rusnik was required to be provided with a copy of the no-contact order. Colo. Rev. Stat. § 18-1-1001(5).[5] Thus, she is presumed to have been aware of the no-contact order, and could have sought to modify it at any time. Although the written policy does not specifically refer to this statute, it does not preclude its application nor, as Mr. Pollack asserts, "indicate[] no route for a modification to no contact orders." (Dkt. #35 ¶ 41.) As just noted, the policy expressly sets forth one route for modification, via a request by the victim, and does not say this is the exclusive means to do so. (Dkt. #45-3.)

Nowhere in his pleadings does Mr. Pollack allege either that Ms. Rusnik unsuccessfully requested that the no-contact order be modified,[6] or that he himself unsuccessfully requested a hearing to seek its modification. In fact, in an earlier

---

[4] I may properly take judicial notice of this statute. *See*, *e.g.*, *Am. Tradition Inst. v. Colorado*, 876 F. Supp. 2d 1222, 1227 n.2 (D. Colo. 2012).

[5] *See also* Colo. Rev. Stat. § 18-6-803.5(3)(a) ("Whenever a protection order is issued, the protected person shall be provided with a copy of such order.")

[6] Mr. Pollack does allege, in his opposition brief, that Ms. Rusnik "is unable to express herself and so cannot apply for the relaxation of the no contact order." (Dkt. #35 ¶ 37.) Although perhaps Ms. Rusnik has difficulty with verbal communications, there is no allegation in Mr. Pollack's amended complaint (or his proposed amended complaint) that she would have been unable to seek modification through a written request; and the fact that Ms. Rusnik has sworn to and signed a written affidavit would refute any allegation that she would have been unable to request, in writing, modification of the no-contact order.

proposed amended complaint, Mr. Pollack specifically stated his attorney *did* seek to have the no-contact conditions dropped after the October 2015 dismissal of the assault charges, but that "the request [wa]s fought by the Prosecutors and the bond conditions instead carried over for another 30 months." (Dkt. #45 at 52.) This indicates not only that Mr. Pollack was represented by counsel, but also that he and his counsel affirmatively sought to modify the no-contact conditions—albeit unsuccessfully.

Mr. Pollack also states that the allegedly unfair "prosecutorial decisions . . . are implicitly supported by the County's policies." (Dkt. #15 ¶ 153.) But just as the Boulder County Board of County Commissioners may not be held liable for actions taken by either the Boulder County District Attorney's Office or the state district court judge who presided over Mr. Pollack's April 2016 trial, neither may the Boulder County Sheriff's Department be liable for any "prosecutorial decisions" made in relation to that trial.

In his proposed amended complaint, Mr. Pollack alleges it is a "well-known fact that in Boulder County based on custom and practice there is no modification hearing afforded a defendant after he is arrested," and that "[t]his was also what the public defender stated to [Mr. Pollack] as 'Boulder County Policy.'" (Dkt. #59-1 ¶ 5.) Thus, Mr. Pollack appears to allege that Boulder County also has an unwritten policy pursuant to which it routinely denies defendant requests for hearings (presumably even those made pursuant to Colo. Rev. Stat. § 18-1-1001(3)). And, he alleges that under Boulder County Sheriff's Department Rule 203 on Precedence, "When there is a County policy that is not addressed by the Sheriff's Office policy the County policy shall be followed." (*Id.* ¶ 7.) In other words, Mr. Pollack alleges that the policy of denying requests for hearings to modify no-contact orders is followed by both the County and the Sheriff's Department.

Again, however, Mr. Pollack does not set forth any factual support for these allegations. It also would not be Boulder County, its Board, or the Sheriff's Department that would deny such a request, further undermining this already attenuated theory of liability.

Further, to the extent Mr. Pollack wanted the no-contact order lifted or modified, he could have, and should have, sought modification from the state court (and, as just noted, it appears that he and his attorney did just that). He then could have appealed any adverse ruling on his request for modification through the appropriate state court process. There is no indication that when the prosecutors successfully "fought" to have the bond conditions carried over, he sought to appeal that outcome.

In sum, I find Mr. Pollack's allegations concerning an alleged policy by either the County or the Sheriff's Department to be conclusory and "without supporting factual averments." *Hall,* 935 F.2d at 1110. The existence of the alleged policy is contradicted by the very documents submitted by Mr. Pollack, and even if such a policy did exist, it should have been raised and challenged through the state court trial and appeal process, rather than via a separate federal lawsuit. As a result, Mr. Pollack's allegations in relation to this policy "are insufficient to state a claim upon which relief can be based." *Id.*

Accordingly, I RECOMMEND that all claims asserted against "Boulder County"— Claims two, four, five, and six—be DISMISSED with prejudice.

**2. Mr. Pollack's False Arrest and Failure to Train Claims (Claims One, Three, and Five) are Barred by the Applicable Statute of Limitations**

Mr. Pollack's false arrest claims, claims one (seizure lacking probable cause) and three (unreasonable seizure), are based on his July 25, 2014 arrest. (Dkt. #15 ¶¶ 5-19, 38-52.) His failure to train claim (claim five) is based on the failure of officers employed

by the Boulder County Sheriff's Department to call Human Services within 24 hours of recognizing Ms. Rusnik's at-risk status on July 5, 2014. (*Id.* ¶¶ 103-05.)

The Tenth Circuit "has made clear that the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (citing *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993)). "[T]he statute of limitations for a Fourth Amendment claim for false arrest or imprisonment 'begin[s] to run . . . when the alleged false imprisonment ends.'" *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). "[E]ither the date of release or the date of sufficient legal process starts the statute of limitations running for [Mr. Pollack's] Fourth Amendment claim." *Id.* at 1083.

Because Mr. Pollack was released from jail five days after his July 25, 2014 arrest, the statute of limitations on his false arrest claims began to run on July 30, 2014, and the statute of limitations expired on July 30, 2016—more than one year before he filed his complaint on October 11, 2017.

Mr. Pollack argues the statute of limitations should be tolled until May of 2017, when he first had "[k]nowledge of the judicial deception which initiated the arrest." (Dkt. #35 ¶ 65.) Mr. Pollack says this was the first time he was permitted to speak with Ms. Rusnik, and when he first discovered she had refused Detective Miller's request to interview her on the day Mr. Pollack was arrested, July 25, 2014.

In Colorado, "equitable tolling applies only when 'plaintiffs did not timely file their claims because of 'extraordinary circumstances' or because defendants' wrongful conduct prevented them from doing so,'" and the burden is on the plaintiff to show he

diligently pursued his rights. *Esquibel v. Cardenas*, No. 15-CV-02289-GPG, 2016 WL 931268, at *3 (D. Colo. Mar. 11, 2016)[7] (quoting *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004)). As the Supreme Court has stressed, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace*, 549 U.S. at 396.

I find there are no extraordinary circumstances here that would justify tolling the statute of limitations. I also find there is no wrongful conduct on the part of Defendants that prevented Mr. Pollack from timely filing his false arrest claims. Mr. Pollack's conclusory allegations that Detective Miller somehow "leverage[d] an arrest with the awareness that" there was a Boulder County policy that would not allow "modification to automatically imposed no-contact orders," are simply too conclusory and attenuated to gain any traction vis-à-vis his tolling argument. To be sure, and as Defendants point out, the no-contact condition is part of a bond issued by the court, not Detective Miller, and its purpose is to protect a domestic violence victim, not to prevent the filing of a claim. (Dkt. #47 at 3.)

It is wholly implausible that Mr. Pollack only realized he might have a claim for false arrest more than two years after the arrest occurred. Mr. Pollack could have hired an attorney or an investigator to speak with Ms. Rusnik to ascertain details concerning his arrest and what she had or had not said to the police. Pursuant to Colo. Rev. Stat. §§ 18-6-803.5(1)(b) and  18-13-126(1)(b)(II), an attorney hired by a restrained person

---

[7] As the court in *Esquibel* also noted, "[w]hen a federal statute [42 U.S.C. § 1983] is deemed to borrow a State's limitations period, the State's tolling rules are ordinarily borrowed as well." *Id.*

such as Mr. Pollack is exempt from the provisions of the no-contact order if "the lawful purpose for locating the protected person is to interview" the protected person, "or for any other lawful person relating to the proper investigation of the case."

In addition, if the affidavit had been based on false or fabricated evidence of domestic violence, Mr. Pollack would have known from the date of his arrest that he had not committed the crime of which he had been accused, prompting additional investigation into the bona fides of the affidavit supporting his arrest. Mr. Pollack also was represented by or had spoken with a public defender in relation to the no-contact order (Dkt. #59-1 ¶ 5), and he was represented by counsel when he was convicted of violating the no-contact order in April 2016. (Dkt. #15 ¶ 85.)

In short, there are no facts alleged that would justify application of the doctrine of equitable tolling to this case.

Concerning Mr. Pollack's failure to train claim, this "accrued when the underlying events occurred," *Calia v. Morrison*, 54 F.3d 787 (table), 1995 WL 311750, at *2 (10th Cir. May 22, 1995), or "when the facts that would support a cause of action are or should be apparent." *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011). Mr. Pollack alleges that on July 5, 2014, five officers, all of whom were aware of Ms. Rusnik's at-risk status, failed to call Human Services within 24 hours, as required by Colo. Rev. Stat. § 18-6.5-108(1)(a). (Dkt. #15 ¶ 103.) Again, had Mr. Pollack exercised reasonable diligence, he would have promptly requested his criminal records relating to his July 25, 2014 arrest, and these records would have made it apparent that no call

had been made to Human Services. Based on the above, I conclude that Mr. Pollack's failure to train claim is time barred.[8]

I therefore RECOMMEND that Mr. Pollack's claims for false arrest and failure to train (claims one, three, and five) be DISMISSED.

### 3. Mr. Pollack's Double Jeopardy and Right to Speedy Trial Claims (Claims Two and Six) are Barred by *Heck v. Humphrey*

*Heck v. Humphrey* "prohibits a plaintiff from attacking the validity of a criminal conviction under 42 U.S.C. § 1983 unless that conviction has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Butler v. Butierres*, 58 F. App'x 458, 459 (10th Cir. 2003) (quoting *Heck*, 512 U.S. at 486–87). In evaluating whether a claim is barred by *Heck*, I must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be

---

[8] To the extent Mr. Pollack is asserting this claim against Detective Miller and Deputy Kellison individually (*See* Dkt. #15 ¶ 131), it fails because he does not (and cannot) allege that they had any duty to train other officers. It similarly fails against all Defendants because Mr. Pollack has failed to allege facts that the Sheriff's Department acted with deliberate indifference, or that there is a direct causal link between any of the alleged constitutional deprivations and the alleged inadequate training. *Canady v. Unified Gov't of Wyandotte County/Kansas City, Kansas*, 68 F. App'x 165, 166 (10th Cir. 2003) (unpublished). *See also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' . . . —can a city [or other municipal entity] be liable for such a failure under § 1983."); *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, *3-4 (D. Colo. May 18, 2011) (granting Rule 12(b)(6) motion to dismiss failure to train claim because plaintiff only speculated that the City and County "must have a policy of inadequate training . . . and that such policy is the moving force behind the alleged constitutional violations, without providing any factual basis for this conclusory leap.").

dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck,* 512 U.S. at 486–87.

Both Mr. Pollack's Fifth Amendment double jeopardy and Sixth Amendment right to a speedy trial claims[9] attack the validity of his April 2016 conviction for violating the no-contact provision of his bond. *See*, *e.g.*, *Miles v. Kennington*, No. 3:17-CV-P514-DJH, 2017 WL 5988352, at *5 (W.D. Ky. Dec. 1, 2017), *appeal dismissed*, No. 18-5310, 2018 WL 3198372 (6th Cir. June 7, 2018) (plaintiff's right to a speedy trial claim "barred by *Heck* . . . because '[t]he sole remedy for a violation of the speedy trial right [is] dismissal of the charges.'") (quoting *Betterman*, 136 S. Ct. at 1615); *Roberts v. O'Bannon,* 199 F. App'x. 711, 714 (10th Cir. 2006) (unpublished) (dismissing plaintiff's § 1983 claim based on double jeopardy because judgment in his favor would necessarily imply the invalidity of his convictions, and plaintiff failed to show he had been exonerated on the charges).

Accordingly, I RECOMMEND that Mr. Pollack's double jeopardy and right to a speedy trial claims be DISMISSED.[10]

---

[9] To the extent Mr. Pollack is asserting Defendants violated his right to a speedy trial claim in relation to his July 25, 2014 arrest, this claim fails as a matter of law because the only remedy available is dismissal of the corresponding criminal charges. *Betterman v. Montana*, 136 S. Ct. 1609, 1615, 194 L. Ed. 2d 723 (2016) (sole remedy for a violation of the speedy trial right is dismissal of the charges). Because there are no remaining criminal charges vis-à-vis Mr. Pollack's July 25, 2014 arrest, the Court lacks the ability to grant any relief and, therefore, it lacks jurisdiction.

[10] Mr. Pollack withdrew these two claims in his proposed Amended Complaint. (Dkt. #59 at 2.) I nevertheless address their merits as they are part of the current operative complaint.

### 4. Mr. Pollack's Exploitation of Illegal Arrest/Malicious Prosecution Claim (Claim Four) Vis-à-vis His April 2016 Prosecution Must be Dismissed.

Mr. Pollack's fourth claim in his amended complaint, for "exploitation of an illegal arrest and malicious prosecution," is directed only at his arrest and prosecution for violating the no-contact condition attached to his bond, which he refers to as the "trailing charge." (Dkt. #15 ¶¶ 55-97.)

Mr. Pollack argues he was unfairly and maliciously prosecuted for violating the no-contact bond condition. (Dkt. #15 ¶¶ 55-97.) He alleges that prosecuting him for this charge after the original assault charge had been dismissed, and referring to the no-contact condition during trial as a "protection" order, were "deliberate act[s] of malice and character assassination." (*Id.* ¶¶ 60-64.). He also asserts it was unfair not to allow him or his counsel to tell the jury that the assault charge had been dismissed; and that because the judge "insisted on saying 'protection' over and over again" this, in turn, "prejudiced the jury creating an insurmountable bias." (*Id.* ¶¶ 68, 69, 70, 74-77.) According to Mr. Pollack, the judge and prosecution's conduct "show[s] malice and exploitation." (*Id.* ¶ 79.)

The elements of a malicious prosecution claim are (1) the defendant caused the plaintiff's confinement or prosecution, (2) the original action terminated in plaintiff's favor, (3) no probable cause supported the original arrest, continued confinement, or prosecution, (4) the defendant acted with malice, and (5) the plaintiff sustained damages. *Id.* at 1082, 1085 (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). Thus, to state a valid claim for malicious prosecution, Mr. Pollack must allege that his arrest for violating the non-contact condition terminated in his favor. *Margheim v. Buljko*, 855 F.3d 1077, 1086 (10th Cir. 2017).

Under circumstances such as this, the Tenth Circuit has explained, "there are two termination requirements relevant to a § 1983 malicious prosecution claim. One is the favorable termination requirement that is an element of the malicious prosecution claim itself. The other is the *Heck v. Humphrey* rule that a litigant cannot bring a § 1983 claim challenging a conviction's legitimacy until that conviction has been dismissed." *Montoya v. Vigil*, 898 F.3d 1056, 1066 n.7 (10th Cir. 2018).

Mr. Pollack has not asserted, and cannot assert, that the arrest or prosecution for his violation of the no-contact condition terminated in his favor. He was convicted, sentenced to a year in community corrections, and his appeal of his conviction was denied. (Dkt. #15 ¶¶ 85, 94, 146.) Mr. Pollack cannot establish the favorable termination element of his malicious prosecution claim vis-à-vis his April 2016 conviction. In addition, his malicious prosecution claim challenges the legitimacy of his April 2016 conviction, and thus is barred under *Heck v. Humphrey*.

Because Mr. Pollack cannot allege an essential element of his malicious prosecution claim in relation to his August 2, 2014 arrest, I therefore RECOMMEND this claim be DISMISSED.

For the reasons stated above, I RECOMMEND that Defendants' Motion to Dismiss (Dkt. #24) be GRANTED, and that all claims asserted by Mr. Pollack in his amended complaint (#15) be DISMISSED with prejudice.

**B. Plaintiff's Motion for Leave to Amend Complaint (Dkt. #59)**

In his proposed amended complaint, Mr. Pollack added two claims: judicial deception, and "deliberate indifferent failure to adopt a policy" concerning modification of no-contact orders. He also clarified that his malicious prosecution claim was directed at his July 25, 2014 arrest. And, finally, he withdrew all claims against Deputy Kellison.

As discussed below, I find that amending to add a claim relating to "failure to adopt a policy" would be futile. However, with respect to his malicious prosecution claim in relation to his July 25, 2014 arrest, I find that he has adequately set forth the elements of that claim. I also find that Detective Miller is not entitled to qualified immunity at this stage of the litigation, and therefore I find that this limited claim is not futile and I recommend Mr. Pollack be allowed to amend his complaint to proceed with this claim. Defendants' only argument concerning Mr. Pollack's judicial deception claim is that it is barred by *Heck v. Humphrey*. I disagree and therefore also recommend Mr. Pollack be allowed to amend his complaint to proceed with the judicial deception claim.

**1. Deliberate Indifference and Judicial Deception**

Defendants argue Mr. Pollack's deliberate indifference and judicial deception claims cannot survive under *Heck v. Humphrey* because any favorable ruling on either claim "would imply that Plaintiff's conviction" for violating the no-contact order "is invalid." (Dkt. #64 at 2.) I agree with respect to his deliberate indifference claim.

The gist of Mr. Pollack's deliberate indifference claim is that because of an inflexible policy on the part of Boulder County, which prevented defendants such as himself from challenging a no-contact order "until a sentence imposed by a judge is completed," the no-contact order that was part of his bond unfairly remained in place

through his conviction for violating the no-contact order, causing him hundreds of thousands of dollars in damage for the loss of his on-line book sale business. (Dkt. #59-1 ¶¶ 5, 19, 27, 184-85, and at p. 31.) As described above, I find this claim barred by *Heck v. Humphrey*. Therefore, I RECOMMEND that Mr. Pollack's motion for leave to amend his complaint to include this claim be DENIED as futile.

As for Mr. Pollack's judicial deception claim, he brings this in relation to his July 25, 2014 arrest, not in relation for violating the no-contact order, and therefore *Heck v. Humphrey* does not apply because Mr. Pollack was never convicted of domestic violence. Other than referring to *Heck v. Humphrey*, Defendants have not made any additional arguments suggesting this is not a viable claim. At this stage, I do not find that pursuing this claim would be futile. *Cf. Odom v. Kaizer*, 417 F. App'x. 611 (8th Cir. 2011) (Reversing district court's dismissal of plaintiff's § 1983 judicial deception claim premised on detective's alleged giving of false information to support arrest warrant). I therefore RECOMMEND that his motion for leave to amend to include this claim be GRANTED.

### 2. Malicious Prosecution Vis-à-vis the July 25, 2014 Arrest[11]

Mr. Pollack asserts this claim against Detective Miller in her official capacity and against Boulder County. For the reasons discussed above, Mr. Pollack's claim against Boulder County is futile, and I therefore RECOMMEND that leave to amend to assert any claim against Boulder County be DENIED.

---

[11] At the February 7, 2019 hearing, counsel for Defendants agreed that Mr. Pollack's malicious prosecution claim is not time barred.

Detective Miller suggests that amending to allow this claim against her would be futile because she is entitled to qualified immunity. (Dkt. #24 at 11.)[12] At this stage of the case, I disagree that amendment to add a malicious prosecution claim in relation to the July 25, 2014 arrest would be futile.

### a. Mr. Pollack has adequately alleged the elements of a malicious prosecution claim in relation to his July 25, 2014 arrest

Concerning the first element of malicious prosecution, Mr. Pollack asserts Detective Miller caused his arrest without a warrant and without probable cause by including in the Arrest Warrant false information, absent which probable cause would not have existed. (Dkt. #59-1 ¶73.) Mr. Pollack points out that the initial deputy who investigated the case, Deputy Powell, concluded no probable cause existed based on his interviews with Ms. Rusnik. (*Id.* ¶78.) According to Mr. Pollack, but for Detective Miller's inclusion of this false information in the Arrest Warrant and her failure to disclose that this information was false, the state would not have continued to pursue, for 14 months, his prosecution for second-degree assault. (*Id.* ¶ 73.) I find that Mr. Pollack has plausibly pled the first element of his malicious prosecution claim in his proposed Third Amended Complaint.

These same allegations, together with certain additional allegations in his proposed amended complaint, also satisfy the third and fourth elements of this claim, that no probable cause supported the original arrest, continued confinement, or

---

[12] In their motion to dismiss, Defendants only address the malicious prosecution claim elements in relation to the August 2, 2014 arrest. In their response opposing Mr. Pollack's motion for leave to amend (Dkt. #64), other than generally saying his proposed amendment would be futile and should be denied for undue delay, Defendants do not address the elements of Mr. Pollack's malicious prosecution claim in relation to his July 25, 2014 arrest.

prosecution, and the defendant acted with malice. If, as Mr. Pollack alleges, the purported probable cause for his July 25, 2014 arrest was premised on a false or fabricated interview with the alleged victim, then no probable cause did, in fact, exist for his arrest or his continued prosecution. And if, as Mr. Pollack asserts, Detective Miller knew at the time she completed the Arrest Warrant that the information she wrote in the affidavit—specifically, that she had spoken with or interviewed Ms. Rusnik prior to Mr. Pollack's arrest—was not true, this suffices to state the malice element. *See Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1124 (D. Colo. 2014) (knowingly or intentionally falsifying evidence is sufficient to establish malice, and malice also may be inferred from the want of probable cause).

As for whether the assault charge associated with Mr. Pollack's July 25, 2014 arrest terminated in his favor, the analysis is a bit more complex. As noted above, the dismissal papers filed in October 2015 indicate the state sought dismissal because Ms. Rusnik could not be located and, without her testimony, "the People are unable to safely proceed to trial in this case." (Dkt. #35-4.) Mr. Pollack disputes this reason. He alleges that not only had the police been informed prior to the October 13, 2015 trial date of Ms. Rusnik's location, the Boulder County Homeless Shelter, but also that Ms. Rusnik "was ready and willing to testify but not for the prosecution." (Dkt. #59-1 ¶¶ 75-76; Dkt. #35 ¶ 43; Dkt. #35-2.) He asserts this is "the true reason [Ms. Rusnik] was not contacted" and, accordingly, that the assault charge against him was dismissed in his favor, thereby satisfying the favorable termination element of his malicious prosecution claim. Viewing Mr. Pollack's proposed amended allegations in the light most favorable to him, the Court agrees that Mr. Pollack satisfies the favorable termination element.

To satisfy the favorable termination element, Mr. Pollack has the "burden to show that the termination was favorable." *Cordova v. City of Albuquerque*, 816 F.3d 645, 650 (10th Cir. 2016). "To carry that burden, [he] must allege facts which, if true, would allow a reasonable jury to find the proceedings terminated 'for reasons indicative of innocence.'" *Montoya*, 898 F.3d at 1066 (quoting *M.G. v. Young*, 826 F.3d 1259, 1263 (10th Cir. 2016)). Dismissal or abandonment of a case alone does not satisfy the favorable termination element, as this type of disposition "leaves the question of the accused's innocence unresolved." *Montoya*, 898 F.3d at 1066. But where, as here, it is unclear from the face of the disposition terminating the case whether the defendant was innocent or guilty, the court looks not only to "the stated reasons for the dismissal," but also "to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Wilkins*, 528 F.3d at 803.

The "dispositive inquiry is whether the failure to proceed *implies* a lack of reasonable grounds for prosecution." *Id.* (quoting *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997)) (emphasis added). In *Wilkins*, for example, the court concluded the terminations would be considered favorable to the plaintiffs because they "were not entered due to any compromise or plea for mercy," but rather "were the result of a judgment by the prosecutor that the case would not be proven beyond a reasonable doubt." *Id.*

In several decisions from other jurisdictions, involving the somewhat analogous situation in which a complaining witness failed to appear or refused to testify, courts have found that "a reasonable jury could conclude that probable cause was lacking and the dismissal was indicative of innocence." *Lopez v. City of Chicago*, No. 09 C 3349,

2011 WL 1557757, at *3 (N.D. Ill. Apr. 25, 2011). *See also Edwards v. Vill. of Park Forest,* No. 07 C 4910, 2009 WL 2588882, at *6 (N.D. Ill. Aug.20, 2009) ("[A] reasonable jury could infer that the lack of probable cause was itself the reason for the officers' failure to appear."); *Mahaffey v. Misner,* No. 07 C 6758, 2009 WL 2392087, at *3 (N.D .Ill. July 31, 2009) (failure of complaining witness to appear "supports a finding of favorable termination" and defeats a motion for summary judgment); *Woods v. Clay,* No. 01 C 6618, 2005 WL 43239, at *15 (N.D. Ill. Jan.10, 2005) ("[G]enuine issue of material fact [existed] as to whether the charges were terminated in plaintiffs' favor [when] Officer Clay failed to appear in court, and as a consequence, those charges were dismissed."); *Petrovic v. City of Chicago,* No. 06 C 6111, 2008 WL 4286954, at *10 (N.D .Ill. Sept.16, 2008) (Where "[t]he prosecution simply abandoned the criminal proceedings because its complaining witness refused to testify . . . [a] rational jury could find that the *nolle prosequi* [dismissal] indicated [the plaintiff's] innocence.").

I find these decisions persuasive. If, as Mr. Pollack asserts, Ms. Rusnik was available to testify, and would have testified in his favor, presumably the case would have terminated in his favor.

**b. It is premature to rule on Detective Miller's qualified immunity defense**

Having concluded that Mr. Pollack has adequately alleged all elements of his malicious prosecution claim in relation to his July 25, 2014, I turn now to Detective Miller's qualified immunity defense. In neither their response opposing Mr. Pollack's motion for leave to amend his complaint (Dkt. #64), or their reply in support of their motion to dismiss (Dkt. #47), do Defendants address qualified immunity in relation to Mr. Pollack's July 25, 2014 arrest. Based on my analysis, set forth below, I conclude

that is it premature, at this stage of the case, to address any qualified immunity defense Detective Miller might have asserted vis-à-vis the July 25, 2014 arrest.

"Qualified immunity protects officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the defense is asserted, it is plaintiff's burden to show not only that the defendant's actions violated a constitutional or statutory right, but also that the right was clearly established at the time of the conduct at issue. *Id.* Concerning the latter, the "relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Because this defense is being evaluated in relation to a Rule 12(b)(6) motion (or based on futility using a 12(b)(6) standard), Detective Miller is subject "to a more challenging standard of review than would apply on summary judgment," as it is Detective Miller's conduct "as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) and *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

In this case, liberally construing the allegations in Mr. Pollack's proposed amended complaint, I believe it would have been clear to Detective Miller that fabricating an interview in the Arrest Affidavit to support a probable cause finding was not lawful. "It is a violation of the Fourth Amendment for an arrest warrant affiant to knowingly, or with reckless disregard for the truth, include false statements in the

affidavit." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal quotations omitted). This is precisely what Mr. Pollack alleges in his proposed amended complaint. He specifically asserts that Detective Miller violated his constitutional rights by fabricating an interview with Ms. Rusnik, and using that false interview as the probable cause basis for the Arrest Affidavit. (*See*, *e.g.*, Dkt. #15 ¶ 11 (alleging Detective Miller "manufactures an interview with" Ms. Rusnik "in her Probable Cause Arrest Affidavit"), ¶ 14 (Detective "Miller authored, and signed off, on an affidavit . . . which had been validated by unquestionably false and patently misleading statements."); Dkt. #59-1 ¶ 80 (alleging Detective Miller willfully and wantonly manufactured an interview with Ms. Rusnik)).

Based on the facts as alleged by Mr. Pollack in his proposed amended complaint, I find he has met his burden with respect to whether he had a clearly established constitutional right at the time of the alleged misconduct, and therefore I RECOMMEND that his motion for leave to amend (Dkt. #59) be GRANTED to allow him to bring a claim against Detective Miller for malicious prosecution in relation to Mr. Pollack's July 25, 2014 arrest.

## IV. Conclusion

For the foregoing reasons, it is RECOMMENDED that Defendants' Motion to Dismiss the Amended Complaint (Dkt. #24) be GRANTED. It is further RECOMMENDED that Plaintiff's Motion for Leave to Amend the Complaint (Dkt. #59) be GRANTED in part and DENIED in part—GRANTED to allow him to amend his complaint to assert claims for judicial deception and malicious prosecution in relation to his July 25, 2014 arrest, and DENIED in all other respects.

**IT IS ORDERED that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); _Thomas v. Arn_, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. _Makin v. Colo. Dep't of Corr._, 183 F.3d 1205, 1210 (10th Cir. 1999); _Talley v. Hesse_, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. _United States v. One Parcel of Real Prop._, 73 F.3d 1057, 1060 (10th Cir. 1996).**

Date:   February 13, 2019

N. Reid Neureiter
United State Magistrate Judge